IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICHAEL A. TILLMAN,

    Plaintiff,

v.                                                                      Civil Action No. **3:13CV748**

**CHARLES H. ALLEN,**

    Defendant.

## MEMORANDUM OPINION

Michael A. Tillman, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983.[1] The action proceeds on his Particularized Complaint (ECF No. 32). In the Particularized Complaint, Tillman argues that, during his incarceration at the Haynesville Correctional Center ("HCC"), Defendant Charles H. Allen, the Warden of HCC, has violated his right to practice his Wiccan religion. The Court construes Tillman to raise the following claims for relief:[2]

    Claim One:     Defendant Allen placed a substantial burden on Tillman's exercise of his religion in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[3] by:

---

[1] That statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned to the Particularized Complaint by the CM/ECF docketing system.

[3] 42 U.S.C. § 2000cc–1(a). In his Particularized Complaint, Tillman only claims that Defendant Allen violated his "religious rights and freedoms . . . under the United States

      (a) failing to allow him to attend Wiccan congregational services and to celebrate Wiccan holidays;
      (b) failing to allow him to partake in the Common Fare diet;
      (c) failing to allow him to possess and use Wiccan religious objects;
      (d) denying Tillman the ability to transfer back to Powhatan Correctional Center where he was able to practice Wicca; and,
      (e) confiscating Tillman's religious property.

  Claim Two:  Defendant Allen violated Tillman's First Amendment[4] right to free exercise of his religion by:
      (a) failing to allow him to attend Wiccan congregational services and to celebrate Wiccan holidays;
      (b) failing to allow him to partake in the Common Fare diet;
      (c) failing to allow him to possess and use Wiccan religious objects;
      (d) denying Tillman the ability to transfer back to Powhatan Correctional Center where he was able to practice Wicca; and,
      (e) confiscating Tillman's religious property.

The matter is now before the Court on Defendant Allen's Motion for Summary Judgment. (ECF No. 41.) Despite providing Tillman with appropriate *Roseboro*[5] notice, Tillman has not responded. This matter is ripe for judgment. For the reasons stated below, Defendant Allen's Motion for Summary Judgment will be GRANTED. Claims One (b), (c), and (e) and Claims Two (b), (c), and (e) will be DISMISSED WITHOUT PREJUDICE because Tillman failed to exhaust his administrative remedies. Defendant Allen does not meet his burden to demonstrate that Tillman failed to exhaust his administrative remedies for Claims One (a) and (d) and Claims

---

Constitution." (Part. Compl. 1.) In his original complaint, Tillman indicated that he believed that his rights were violated under "(R.L.U.I.P.A)." (ECF No. 1, at 4.) Despite the Court's warning that the Particularized Complaint would supplant the original complaint, Tillman failed to restate his claim pursuant to RLUIPA in the Particularized Complaint. Nevertheless, the Court generously construes Tillman to raise a claim pursuant to RLUIPA and the First Amendment.

  [4] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

  [5] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

2

Two (a) and (d). Nevertheless, these claims will be DISMISSED WITH PREJUDICE because Tillman fails to demonstrate a violation of RLUIPA or his First Amendment rights.

## I. SUMMARY JUDGMENT

### A. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

Defendant Allen asks the Court to dismiss Tillman's claims, *inter alia*, because Tillman failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendant Allen bears the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of his Motion for Summary Judgment, Defendant Allen submits: (1) his own affidavit (Mem. Supp. Mot. Summ. J. Ex. I ("Allen Aff."), ECF No. 42–1); (2) the affidavit of Rose T. Brown, the Grievance Coordinator at HCC (*Id.* Ex. II ("Brown Aff"), ECF No. 42–2); (3) a copy

3

of Virginia Department of Corrections ("VDOC") Operating Procedure § 866.1 (*id.* Encl. A ("Operating Procedure § 866.1"));[6] (4) copies of grievances material submitted by Tillman (*id.* Encl. B–F); (5) the affidavit of L. Baker, the Property Officer at HCC (*Id.* Ex. III ("Baker Aff."), ECF No. 14–3); and (6) VDOC Operating Procedure § 802.1 (Baker Aff. Encl. A ("Operating Procedure § 802.1")); and, (7) an inmate request form submitted by Tillman (*Id.* Encl. B).

As Tillman failed to respond, Tillman fails to cite the Court to any evidence that he wishes the Court to consider in opposition to the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment).[7] Tillman's complete failure to present any evidence to counter Defendant Allen's Motion for Summary Judgment permits the Court to rely solely on Defendant Allen's submissions in deciding the Motion for Summary Judgment. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992))).

Accordingly, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Tillman.

## II. UNDISPUTED FACTS

### A. VDOC's Grievance Procedure

Operating Procedure § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints in the VDOC. (Brown Aff. ¶ 4.) Offenders are oriented to the

---

[6] The Court has omitted the emphasis in the quotations from this document.

[7] Tillman submitted an unsworn Complaint and some grievances that he submitted at HCC. Because Tillman failed to swear to the contents of his Complaint under penalty of perjury, that submission fail to constitute admissible evidence. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).

4

offender grievance procedure when they are initially received into the VDOC. (*Id.* ¶ 6.) Operating Procedure § 866.1 requires that, before submitting a formal grievance, the inmate must demonstrate that he or she has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. (Operating Procedure § 866.1.V.A.) Generally, a good faith effort requires the inmate to file an informal complaint form. (*Id.* § 866.1.V.B.1.) If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. (*Id.* § 866.1.VI.A.2.)

"The original Regular Grievance (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing by the Institutional Ombudsman/Grievance Coordinator." (*Id.* § 866.1.VI.A.2.b.) The offender must attach to the regular grievance a copy of the informal complaint. (*Id.* § 866.1.VI.A.2.a.) Additionally, "[i]f 15 calendar days have expired from the date the Informal Complaint was logged without the offender receiving a response, the offender may submit a Grievance on the issue and attach the Informal Complaint receipt as documentation of the attempt to resolve the issue informally." (*Id.* § 866.1.V.A.2.) A formal grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

### 1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. (*Id.* § 866.1.VI.B.) A grievance meeting the criteria for acceptance is logged in on the day it is received, and a "Grievance Receipt" is issued to the inmate within two days. (*Id.*

5

6

§ 866.1.VI.B.3.) If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the grievance and return the grievance to the inmate within two working days. (*Id.* § 866.1.VI.B.4.) If the inmate desires a review of the intake decision, he or she must send the grievance form to the Regional Ombudsman within five calendar days of receipt. (*Id.* § 866.1.VI.B.5.)

### 2. Grievance Appeals

Up to three levels of review for a regular grievance exist. (*Id.* § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. (*Id.* § 866.1.V.C.1.) If the offender is dissatisfied with the determination at Level I, he may appeal the decision to Level II, a review which is conducted by the Regional Administrator, the Health Services Director, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she may pursue an appeal to Level III. (*Id.* § 866.1.VI.C.2.g.)

### B. Facts Pertaining to Tillman's Exhaustion of Administrative Remedies

On July 8, 2013, Tillman submitted an informal complaint (#HCC-13-INF-00843) wherein he complained that upon his arrival at HCC a printed handkerchief and an amulet were confiscated from his property. (Brown Aff. ¶ 11; *id.* Encl B.) Tillman indicated that he practiced Wiccan and that the handkerchief was a talisman banner of protection and the amulet was of a Wiccan deity. (Brown Aff. ¶ 11.) On July 16, 2013, Lt. Manning responded to Tillman's informal complaint and informed Tillman that the Wiccan practice was not recognized at HCC and that Tillman could mail these items out of the institution. (Brown Aff. ¶ 12; *id.* Encl. B.)

On July 22, 2013, Tillman submitted a regular grievance stating that Lt. Manning had informed him that HCC did not recognize Wicca as a religious practice at HCC and that as a result he was being deprived of his legal right to fellowship and to practice Wicca. (Brown Aff. ¶ 13; *id.* Encl. C.) Tillman also indicated that this was a violation of his religious rights and that he wanted to be transferred back to Powhatan Correctional Center where he could practice Wicca and "Wicca meals are served." (Brown Aff. ¶ 13; *id.* Encl. C.) Tillman did not mention the confiscation of his property in this grievance. Brown rejected Tillman's grievance because Tillman had not attached to his grievance documentation reflecting that he had submitted an informal complaint concerning these issues. (Brown Aff. ¶ 13)

On July 25, 2013, Tillman submitted an informal complaint (#HCC-13-INF-00955) wherein he complained that Lt. Manning told him that Wicca was not a recognized religion at HCC and that as a result he was being deprived of his legal right to fellowship and to practice Wicca. (Brown Aff. ¶ 14; *id.* Encl. D.) Tillman stated that this violated his religious rights and that he wanted to be transferred back to Powhatan Correctional Center where he could practice his religious beliefs and receive Wicca meals. (Brown Aff. ¶ 14; *id.* Encl. D.) On July 26, 2013, Institutional Program Manager, K. Cox, responded to the informal complaint and indicated that Wicca was a recognized religion in the VDOC, but that HCC did not have an organized Wicca group or sponsor. (Brown Aff. ¶ 14; *id.* Encl. D.) Cox further explained to Tillman that if he had a contact for a Wiccan representative, to inform the Chaplain so that a volunteer application could be started. (Brown Aff. ¶ 14; *id.* Encl. D.)

On September 5, 2013, Tillman submitted a regular grievance stating that he had not received a response to his informal complaint (#HCC-13-INF-00843) or regular grievance about the confiscated property and that he wanted the property returned to him. (Brown Aff. ¶ 15; *id.*

7

Encl. E.)[8] On September 6, 2013, Brown rejected the regular grievance at intake because Tillman failed to provide the grievance number and instructed Tillman to resubmit his grievance. (Brown Aff. Encl. E, at 2.) On September 9, 2013, Tillman resubmitted a similar regular grievance stating that he had not received a response to his informal complaint (#HCC-13-INF-00843) or regular grievance about the confiscated property and that he wanted the property returned to him. (Brown Aff. ¶ 15; *id.* Encl. E.) Brown avers that she rejected the grievance due to expired filing time because Tillman's property was confiscated on July 3, 2013. (Brown Aff. ¶ 15; *see* Operating Procedure 866.1.VI.A.1 (requiring grievance submission "within 30 calendar days from the date of occurrence/incident").

On September 17, 2013, Tillman submitted a regular grievance stating that he was being deprived of practicing his Wicca religion because HCC failed to have Wicca "service[s] and fellowship with meals." (Brown Aff. ¶ 16; *id.* Encl. F.) As the action he desired HCC to take, Tillman indicated that he wanted "to be sent back to Powhatan Correctional Center where Wicca service, fellowship, and meals are already recognized." (*Id.*) Brown rejected the grievance because it was an improper request for services because he was asking to be transferred back to Powhatan. (*Id.*)

Brown avers that based on the grievance records, Tillman failed to exhaust his administrative remedies for his claims. (Brown Aff. ¶ 10.)

C.  **Undisputed Facts for RLUIPA/Free Exercise**

Tillman was transferred to HCC on July 3, 2013. (Allen Aff. ¶ 5.) Powhatan Correctional Center is now closed. (*Id.*) HCC has no Wiccan religious services because there

---

[8] Tillman's underlying complaint is not accurate. Tillman received a response to this informal complaint from Lt. Manning. (Brown Aff. ¶ 12; *id.* Encl. B.) Tillman clearly complained about Lt. Manning's response in his July 22, 2013 regular grievance. (Brown Aff. ¶ 13; *id.* Encl. C.) Moreover, Tillman never filed a grievance about his confiscated property.

8

are not enough Wiccan offenders in the facility to create group meetings. (*Id.* ¶ 8.) Tillman submitted offender request forms requesting Wiccan services. (*Id.* ¶ 7.) In response to Tillman's request forms, Tillman was invited to make an appointment with the Chaplain to discuss the issue. (*Id.*) Tillman never requested an appointment with the Chaplain. (*Id.*)[9] VDOC Operating Procedure 841.3, Religious Services ("Operating Procedure 841.3") establishes that a minimum of five offenders are required for a religious group to meet in all VDOC facilities. (*Id.* ¶ 9.) In certain instances "the Facility Unit Head has the discretion to lower the minimum number and allow a group to be established and meet." (*Id.* (quoting Operating Procedure 841.3).) The Warden must approve this request and considers factors such as the availability of staff and facility resources and whether the group meeting would compromise security. (*Id.* ¶ 10.) Operating Procedure 841.3 requires that at least one staff member must be present at all religious meetings. (*Id.*) Moreover, group meetings entail costs, which in turn, affect other scheduled activities within the institution. (*Id.*) Allowing offenders of less than five to meet would require more staffing and would force the institution to accommodate more religions.

Tillman was offered a transfer to another VDOC facility that has a Wiccan community, but refused the offer. (*Id.* ¶ 11.)

### III. EXHAUSTION ANALYSIS

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail,

---

[9] Tillman attached copies of Request Forms to his Particularized Complaint that confirm that the Chaplain told Tillman to "sign up on the Chaplain's sheet in your dormitory to get an appointment to talk with me about this." (ECF No. 32–1, at 12.) The Chaplain also told Tillman: "Yes, presently, as you've noticed there is no Wiccan group meeting here. We have had two different groups in past years. Lately, at least two guys that are here have asked about starting a new group." (*Id.*) Approximately ten days later, Tillman submitted another request for services with the Chaplain, and the Chaplain again instructed Tillman to "sign up for the Chaplain's Office Appointment to get some resolve." (*Id.* at 13.)

9

prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Additionally, the Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "'so that the agency addresses the issues on the merits.'" *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *See Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002)

Here, Tillman clearly failed to exhaust his administrative remedies with regard to Claims One (b), (c), and (e), and Two (b), (c), and (e). While Tillman filed several informal complaint and regular grievances complaining about portions of Claims One (c) and (e), and Two (c) and (e), Tillman never pursued any of his grievances on appeal, much less to a Level II appeal. Thus, he failed to comply with 42 U.S.C. § 1997e(a). *See Woodford*, 548 U.S. at 90. Moreover, Tillman never filed any informal complaint or grievance asking to be placed on the Common Fare diet.[10] Tillman offers no argument to excuse his failure to exhaust his administrative

---

[10] The record also establishes that Tillman has not submitted a Common Fare diet application in order to receive Common Fare Meals. (Allen Aff. ¶ 12.)

10

remedies for these claims. Accordingly, Claims One (b), (c), and (e), and Two (b), (c), and (e) will be DISMISSED.

Defendant Allen also argues that Tillman failed to exhaust his administrative remedies for Claims One (a) and (d), and Claim Two (a) and (d). These claims involve Tillman's request for Wiccan services and to be transferred back to Powhatan. Defendant Allen claims that Tillman failed to exhaust his administrative remedies because he never pursued his grievances on appeal. However, Tillman's grievance where he complained about the lack of Wiccan services and his request to be transferred back to Powhatan was rejected as a "[r]equest for services." (Brown Aff. Encl. F, at 2.) Defendant Allen fails to explain how Tillman could exhaust his administrative remedies for these claims when HCC essentially informed Tillman that his claims were not grievable because they are a request for services. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (internal quotation marks omitted) (citations omitted) (explaining that "prisoners must exhaust such administrative remedies *as are available*" and that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it"). Accordingly, Defendant Allen fails to demonstrate that Claims One (a) and (d) and Two (a) and (d) should be dismissed for lack of exhaustion.

### III. RLUIPA AND FREE EXERCISE CLAIMS

#### A. RLUIPA

RLUIPA provides, in pertinent part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

11

42 U.S.C. § 2000cc–1(a). Thus, to begin, Tillman must demonstrate that Defendants' policies impose a "substantial burden" on his religious exercise. In determining if Tillman has met this standard, the Court must answer two questions: "(1) Is the burdened activity 'religious exercise,' and if so (2) is the burden 'substantial'?" *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004); *see Couch v. Jabe*, 679 F.3d 197, 200–01 (4th Cir. 2012) (employing similar two-part inquiry).

### 1.     Whether the Burdened Activity Is a Religious Exercise

"RLUIPA defines the term 'religious exercise' broadly to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Couch*, 679 F.3d at 200 (quoting 42 U.S.C. § 2000cc–5(7)(A)). Tillman's claims implicate two activities: his desire to have Wiccan services and fellowship, and his desire to be transferred back to Powhatan Correctional Center where he can engage in Wiccan services and fellowship. Tillman fails to establish that a transfer back to Powhatan is a religious exercise; thus, it is not a protected activity. Moreover, the uncontroverted evidence demonstrates that Powhatan is now closed and Defendant Allen cannot transfer Tillman back to that facility. Accordingly, Claim One (d) will be DISMISSED because it asks for something that is not a religious exercise. The Court assumes that Tillman's desire to have Wiccan services and fellowship is a religious exercise.

### 2.     Tillman Fails to Demonstrate a Substantial Burden on His Religious Exercise

Tillman fails to demonstrate a substantial burden on his religious exercise. RLUIPA fails to define the term substantial burden. *See Couch*, 679 F.3d at 200. The United States Court of Appeals for the Fourth Circuit determined that the Supreme Court's jurisprudence interpreting the Free Exercise Clause provides guidance on the issue. *See Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). Thus, the Fourth Circuit has explained that a substantial burden

12

is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand.

*Couch*, 679 F.3d at 200 (alterations and omission in original) (quoting *Lovelace*, 472 F.3d at 187). In conducting the substantial burden inquiry, the plaintiff "is not required . . . to prove that the exercise at issue is required by or essential to his [or her] religion." *Krieger v. Brown*, 496 F. App'x 322, 325 (4th Cir. 2012) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)). Nevertheless, "at a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007) (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004));[11] *see Krieger*, 496 F. App'x at 326 (affirming grant of summary judgment where inmate failed to "show that the deprivation of an outdoor worship circle and the requested sacred items modified his behavior and violated his religious beliefs" (citing *Lovelace*, 472 F.3d at 187)). Thus, no substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007).

Two recent cases from the Fourth Circuit illustrate a plaintiff's responsibility with respect to demonstrating a substantial burden. In *Couch*, the plaintiff "testified that the primary religious texts of Islam command that he grow a beard and that the refusal to maintain a beard is a sin comparable in severity to eating pork." *Couch*, 679 F.3d at 200. The VDOC's grooming policy

---

[11] In *Sossamon v. Texas*, 563 U.S. 277, 293 (2011), the Supreme Court abrogated *Smith*'s ultimate holding that RLUIPA allows for monetary damages against state officials acting in their official capacity.

13

prohibited inmates from growing beards and enforced this rule by placing a noncompliant inmate in a program that restricted or limited the inmate's "access to personal property, movement rights, the right to eat and associate with others, recreation time, and visitation time." *Id.* at 199. The Fourth Circuit concluded that VDOC's grooming policy and enforcement mechanism, "fit squarely within the accepted definition of 'substantial burden'" because it placed substantial pressure on the plaintiff to modify his behavior and violate his beliefs. *Id.* at 200–01 (citing *Warsoldier v. Woodford*, 418 F.3d 989, 995–96 (9th Cir. 2005)).

In *Krieger*, the Fourth Circuit declined to find an inmate had demonstrated a substantial burden where prison officials denied "his requests for an 'outdoor worship circle' and certain 'sacred items' related to his religious practice of Asatru." *Krieger*, 496 F. App'x at 322. The plaintiff "asserted that deprivation of the outdoor worship circle would require him to pray indoors, and that the 'Blot' ceremony is '*best* performed outdoors.'" *Id.* at 325 (emphasis added). The Fourth Circuit concluded that the mere denial of the optimal manner for performing the "Blot" ceremony could not demonstrate a substantial burden where the plaintiff "failed to offer any explanation regarding the reason why indoor worship would compromise his religious beliefs." *Id.* Similarly, the inmate failed to demonstrate a substantial burden with respect to the denial of additional sacred items simply by the "blanket assertion" that "the sacred items were 'necessary' to perform 'well-established rituals.'" *Id.* at 326. The Fourth Circuit noted that plaintiff "did not identify those rituals, or explain why the absence of the sacred items had an impact on the rituals and violated his beliefs." *Id.*

*Krieger* illuminates another consideration in conducting the substantial burden inquiry. The availability to an inmate, in the most general sense, of other means to practice his or her

14

faith is not relevant to the RLUIPA substantial burden inquiry. *Al–Amin v. Shear*, 325 F. App'x 190, 193 (4th Cir. 2009). "Nevertheless, courts properly consider whether the inmate retains other means for engaging in the particular religious activity, such as the "Blot" ceremony, in assessing whether a denial of the inmate's preferred method for engaging that religious exercise imposes a substantial burden." *Shabazz v. Va. Dep't Corr.*, 3:10CV638, 2013 WL 1098102, at *7 (E.D. Va. Mar. 15, 2013) (citing *Krieger*, 496 F. App'x at 326; *Coleman v. Governor of Mich.*, 413 F. App'x 866, 875–76 (6th Cir. 2011)).

Furthermore, the plaintiff must demonstrate that a government practice, rather than some other consideration not attributable to the government, imposes the substantial burden on his or her religious exercise. *See Adkins*, 393 F.3d at 571. For example, in *Adkins*, the prison system required that an accredited outside volunteer be present to lead any congregation meeting. *Id.* at 563. Adkins, a member of the Yahweh Evangelical Assembly ("YEA"), asserted that "he has not been permitted to observe particular days of rest and worship (each Saturday for the Sabbath and a number of specific holy days), which is a requirement of his faith." *Id.* at 562. Although "the evidence show[ed] that Adkins was and is prevented from congregating with other YEA members on many Sabbath and YEA holy days," the United States Court of Appeals for the Fifth Circuit rejected the assertion that this burden was attributable to the prison system. *Id.* at 571. The Fifth Circuit observed that Adkins' inability to congregate on certain days "results . . . from a dearth of qualified outside volunteers available to go to [his prison] on every one of those days, not from some rule or regulation that directly prohibits such gatherings." *Id.*; *see Walls v. Schriro*, No. CV 05–2259–PHX–NVW (JCG), 2008 WL 544822, at *12–13 (D. Ariz. Feb. 26, 2008) (concluding no RLUIPA violation and no substantial burden on inmate's religious practice where inmate's housing unit lacked sufficient number of members of his faith group and

available volunteers to allow inmate to engage in religious services, and prison declined to transfer inmates to obtain quorum where volunteers were available).

Tillman fails to demonstrate that his inability to participate in Wiccan services was a result of Defendant Allen's policy or actions, rather than Tillman's obstinance and indolence. The evidence demonstrates that no Wiccan group religious services were held at HCC because there were not enough Wiccan offenders to constitute group meetings or services. *See Adkins*, 393 F.3d at 571; *Walls*, 2008 WL 544822, at *12–13. Tillman was offered the opportunity to transfer to another VDOC facility that has a Wiccan community, but he refused the offer. (Allen Aff. ¶ 11); *cf. Hassan v. Newhart*, No. 3:12CV976, 2015 WL 139085, at *3–4 (E.D. Va. Jan. 9, 2015). Additionally, the Chaplain offered to meet with Tillman to discuss how to accommodate Tillman's desire for Wiccan services; however, the uncontroverted evidence establishes that Tillman never made an appointment to meet with the Chaplain. Under these circumstances, the record establishes that Tillman's inability to participate in Wiccan services was due to his own lack of action rather than due to government conduct.

**B.  Free Exercise Claims**

Similar to RLUIPA, in order for Tillman to survive summary judgment for his First Amendment claim, Tillman must demonstrate Defendants' conduct substantially burdens his religious exercise. *Whitehouse v. Johnson*, No. 1:10cv1175 (CMH/JFA), 2011 WL 5843622, at *5 (E.D. Va. Nov. 18, 2011). "RLUIPA provides considerably more protection for an inmate's religious exercise than does the Free Exercise Clause of the Constitution of the United States." *Id.* at *5 (citing *Lovelace*, 472 F.3d at 186). Thus, "[w]here an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well." *Van Wyhe v. Reisch*, 581

F.3d 639, 657–58 (8th Cir. 2009) (citing *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008)). As explained above, Tillman has failed to demonstrate a substantial burden on his religious exercise. Accordingly, Claims Two (a) and (d) will be DISMISSED WITH PREJUDICE.

## IV. CONCLUSION

Accordingly, the Motion for Summary Judgment (ECF No. 41) will be GRANTED. Claims One (b), (c), and (e) and Two (b), (c), and (e) will be DISMISSED WITHOUT PREJUDICE. Claims One (a) and (d) and Two (a) and (d) will be DISMISSED WITH PREJUDICE. The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

/s/
James R. Spencer
Senior U. S. District Judge

Date: 5-9-16
Richmond, Virginia